IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID YOUNG,<br><br>　　　　　　　Petitioner,<br><br><br>　　vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Respondent. | ORDER AND<br>MEMORANDUM DECISION<br>DENYING § 2255 MOTION<br><br><br><br>Civil Case No. 2:15-CV-214-TC<br>Criminal Case No. 2:12-CR-502-001-TC |

## **INTRODUCTION**

On December 13, 2013, David Young pleaded guilty to two charges: (1) violation of the Procurement Integrity Act, and (2) money laundering.  Now in custody, David Young has filed two timely Motions to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

Mr. Young raises the following grounds in support of his Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255 and Memorandum [of] Law [in] Support (ECF No. 5) ("Amended Motion"):[1] (1) he is innocent; (2) he received ineffective assistance of counsel; (3) the United States withheld exculpatory evidence; and (4) the United States engaged in prosecutorial misconduct.

Mr. Young filed his original motion and his Amended Motion pro se.  Mr. Young holds a master's degree in psychology and a juris doctor degree.  But the court appointed an attorney to

---

[1]The United States does not oppose the filing of an amended motion.

represent Mr. Young when the record became more complicated—primarily because Mr. Young filed atypical motions for discovery and for summary judgment.  The court concluded that an attorney could help Mr. Young focus on the relevant issues.

The court held a hearing on Mr. Young's Amended Motion on November 22, 2015.  No evidence was taken.  Mr. Young's attorney appeared and argued on his behalf.  Mr. Young listened to the argument by telephone.

For the reasons set forth below, the court denies Mr. Young's motions.[2]

## **FACTUAL BACKGROUND**[3]

In 2012, the United States indicted Mr. Young, Christopher Harris, Michael Taylor and American International Security Corporation (AISC), Mr. Taylor's company.  The indictment charged Mr. Young with conspiracy, government procurement fraud, acceptance of a bribe, wire fraud, conspiracy to commit money laundering, and money laundering.  Included in the indictment was a notice that the United States intended to seek forfeiture of $54,000,000 in real property, cash, gold coins, and vehicles.  Many of the assets named were the property of Mr. Young.

During the events laid out in the indictment, Mr. Young was a lieutenant colonel serving in Afghanistan with the United States Army.  The indictment outlined a complex scheme centering on Mr. Young's disclosure to his co-defendants, in exchange for money, of confidential bid information about a government contract.  Because of his position, Mr. Young possessed

---

[2]The reasons for the denial of the Amended Motion also apply to Mr. Young's first motion.

[3]All docket citations will be to the docket for the civil case, 2:15-cv-214-TC, and not to the docket for the criminal case, 2:12-cr-502-TC, unless specifically noted.

confidential information about a government contract that was soon to be bid.  It was this confidential information that he disclosed.  (Indictment, 2:12-cr-502 ECF No. 11.)

Mr. Young retained two attorneys for his defense: Brett Tolman, who had served as the United States Attorney for the District of Utah after working as an assistant United States attorney for several years, and Eric Benson, Mr. Tolman's law partner, who had also been an assistant United States attorney.  The two attorneys engaged in an active defense of Mr. Young, filing motions and seeking discovery from the United States.

For example, among the motions filed on behalf of Mr. Young were a request for reciprocal discovery (2:12-cr-502 ECF No. 51); an opposition to the testimony of the United States' proposed experts (2:12-cr-502 ECF Nos. 380, 382); a motion to change venue (2:12-cr-502 ECF No. 65); a motion to sever Mr. Young's trial from the trial of his co-defendants (2:12-cr-502 ECF No. 257); and a motion to exclude Rule 404(b) evidence (2:12-cr-502 ECF No. 220). Also, it appears that, based on the court's observations and discussions during numerous hearings and status conferences, Mr. Young's attorneys were frequently contacting the United States and requesting additional discovery.[4]  In particular, they filed a motion to compel discovery, which was pending and scheduled for hearing at the time Mr. Young accepted the United States' plea offer.

On November 27, 2013, Michael Taylor, Mr. Young's co-defendant, pleaded guilty. Christopher Harris, Mr. Young's other co-defendant, pleaded guilty on December 9, 2013, and four days later, Mr. Young pleaded guilty.

---

[4]The United States filed nineteen notices of compliance of discovery.  (See 2:12-cr-502 ECF No. 665.)

**Mr. Young's Motion to Compel**

On November 14, 2013, about one month before Mr. Young pleaded guilty, his attorneys filed a motion to compel production of most of the documents that Mr. Young now claims the United States failed to produce and which, according to Mr. Young, would have proved his innocence.  (See Nov. 14, 2013 Mot. to Compel, 2:12-cr-502 ECF No. 476.)  Most of those documents were generated by the military and fell within the broad category of documents known as "situation reports" (SITREPS).[5]  The United States opposed the motion arguing that it was not required to produce the documents because Mr. Young had not shown that the United States had them.  (United States Resp. to Mot. to Compel, 2:12-cr-502 ECF No. 508.)

A couple of weeks later, the attorneys met with the court in chambers to discuss discovery.  During the meeting, the court directed the United States to try to get the SITREPS and give them to Mr. Young.

On December 7, 2013, the United States filed a status report summarizing its efforts to identify and obtain the SITREPS.  (Status Report, 2:12-cr-502 ECF No. 515.)  In the report, the United States described the problems it was facing in its efforts to get the relevant SITREPS.  These problems included the location of the documents (at an air force base in Florida) and the classification of the documents as "secret."  (Id. 2.)  The United States gave December 11, 2013, two days before the scheduled date of the hearing on Mr. Young's motion to compel, as the date

---

[5]The United States describes SITREPS as "includ[ing] a broad universe of material related to innumerable types of issues and events.  A SITREP can be a verbal report, an email or a more formalized written report and be voluminous for any given day."  (U.S. Resp. to § 2255 Mot. 3 n.1, ECF No. 4.)  Moreover, according to the United States, "Because of the expansive definition associated with SITREPS, there is no effective way to determine whether the reports Young sought ever existed or were retained."  (Id. 3 n.2.)

when it could "update" the status report.  (Id. 3.)  The United States concluded its status report

with the caution that, based on its review of the SITREPS it did have, it did not expect that any of

the documents would contain discoverable evidence, and that, in any event, the United States,

Mr. Young, and Mr. Young's attorneys would have to follow the requirements of the Classified

Information Procedures Act before any discoverable evidence could be produced.  (Id. 3.)  But

before the United States had updated its report, before the scheduled oral argument on the motion

to compel, and after Christopher Harris, Mr. Young's second co-defendant, pleaded guilty on

December 9, 2013, Mr. Young and the United States reached a plea agreement.

**Mr. Young's Guilty Plea**

On December 13, 2013, Mr. Young pleaded guilty to a felony information.[6]  The felony

information charged Mr. Young with one count of violation of the Procurement Integrity Act (41

U.S.C. § 2102(b) and § 2105), and money laundering (a violation of 18 U.S.C. § 1957).  (Felony

Information, 2:12-cr-502 ECF No. 533.)

At the change of plea hearing, Mr. Young and his two attorneys appeared before this court.

In anticipation of the plea, the court began by questioning Mr. Young about his physical and

mental state, asking Mr. Young if he had fully discussed the case with his attorneys and whether

Mr. Young was satisfied with the representation Mr. Tolman and Mr. Benson had given him:

> THE COURT:          Mr. Young, have you had all the time you need to talk about your
>                     case with your attorneys?
>
> THE DEFENDANT:  Yes, Your Honor.

---

[6]The felony information replaced the Indictment.  (See Statement in Advance of Plea,
2:12-cr-502 ECF No. 527 ¶ 1; Change of Plea Tr. 8, 2:12-cr-502 ECF No. 543.)

THE COURT:          Have they explained the case and the evidence and the charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT:          Have they explained to you the consequences of pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT:          Are you satisfied with your attorneys?

THE DEFENDANT: Very satisfied with counsel, yes, ma'am.

(Change of Plea Tr. ("COP Tr.") 5, 2:12-cr-502 ECF No. 543.)

The court found Mr. Young competent to plead guilty but told him of the rights he would be giving up if he pleaded guilty. After explaining each of these rights to Mr. Young, the court asked him if he understood the particular right being described. (Id. 5-8.)

The court took care to ensure that Mr. Young understood the two charges in the newly-filed felony information to which Mr. Young was to plead guilty—Count 1, Violation of the Procurement Integrity Act, and Count 2, Money Laundering. The court asked the Assistant United States Attorney to explain to Mr. Young the elements that the United States would have to prove beyond a reasonable doubt for each of the two charges in the felony information. After each charge was explained, the court asked Mr. Young if he understood what the Government would have to prove and if he had discussed the charge with his attorneys and the evidence related to each charge. (Id. 8-11.) Mr. Young answered "yes" to the court's questions. (Id.)

After explaining the possible penalties to Mr. Young, the court discussed with him the provision in his plea agreement in which he and the United States had agreed, as allowed by Federal Rule of Criminal Procedure 11(c)(1)(C), to a sentence of between 36 and 48 months. (Id. 12-13.) To each question about sentencing and penalties, Mr. Young told the court he

6

understood.  (Id.)

The court then turned to the "Statement by Defendant in Advance of Plea of Guilty

Pursuant to Fed. R. Crim. P. 11(c)(1)(C)."  (2:12-cr-502 ECF No. 527.)  This document, given by

the United States to Mr. Young's attorneys sometime before the hearing, reiterated many of the

cautions the court had given to Mr. Young.

Mr. Young told the court that he had reviewed the document with his attorneys and they

had answered any questions he had about its contents.  And although Mr. Young told the court

that he had reviewed the proposed plea agreement with his attorneys, the court went over it with

him, paying particular attention to the two waiver provisions:

> THE COURT:         I might summarize a bit. Here's what you're agreeing to. You'll
> plead guilty to Counts 1 and 2 of the Information, those are the
> charges we went over, and you realize that ordinarily, even if you
> pled guilty, you would have a limited right to appeal your sentence,
> but you are giving that up and you cannot file an appeal unless I
> give you a sentence that is more than say 48 months; do you
> understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:         Similarly, you're giving up your right to file a collateral motion, a
> collateral attack motion, and that's usually called a 2255 in the
> Federal system, sometimes a habeas.  That's a separate legal
> proceeding.  People in custody can file a lawsuit saying that they
> are being held illegally challenging their sentence. You're giving
> that up.  The only way you could file that is if you could allege in
> good faith you received ineffective assistance of counsel in
> connection with this plea; do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:         Also, you could file an appeal and you could file a collateral attack
> motion if for some reason, and the government's rights are limited
> too, but if the government files an appeal, you could file an appeal
> and you file a collateral attack motion; do you understand

that?

          THE DEFENDANT:  Yes, Your Honor.

(COP Tr. 15-16.)

          After discussing the property that Mr. Young agreed to forfeit and the agreed-upon sentencing guideline range of 36 to 48 months, the court asked Mr. Young whether he believed that what was written in the Statement in Advance of Plea which the court had reviewed with him was the full agreement he had with the United States.  Mr. Young answered that it was.  (Id. 20.)  The court also asked Mr. Young whether anyone had forced or threatened him to enter into the plea agreement.  Mr. Young answered no.  (Id.)

          The court went over the factual basis for Mr. Young's plea.  After pointing out where in the Statement in Advance of Plea the factual basis was, the court directed Mr. Young to review it.  (Id. 21.)  The court then questioned Mr. Young:

> THE COURT:  . . . In a moment, after you've reviewed them, I'm going to ask you if these facts are true.  If in fact you answer me, you know you'll be giving up your right against self-incrimination; do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  You know what you say can be used against you in another proceeding?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  If you do answer me, I want you to be completely honest. If something isn't correct, you tell me that; if it is correct, you tell me that. Have you carefully reviewed paragraph 11? There are one, two, three, four subparagraphs under that.
>
> THE DEFENDANT:  Yes, Your Honor.

THE COURT:          You've gone over these subparagraphs with your attorneys?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:          Are they – is this correct, is this what you're guilty of?

THE DEFENDANT:  Yes, Your Honor.

(Id.)

After that colloquy, Mr. Young and his attorneys signed the Statement in Advance of

Plea, the charges were read to Mr. Young, and he pleaded guilty.

**The Sentencing Hearing**

On June 13, 2014, the court held a sentencing hearing.  Mr. Young and his two attorneys

were present.  Before the hearing, Mr. Young's attorneys filed a sentencing memorandum in

which they argued that a sentence of 36 months (the low end of the 36 to 48 month sentencing

guideline range which the Defense and the United States had agreed upon) was an appropriate

sentence.  (Young Sentencing Mem., 2:12-cr-502 ECF No. 592.)  In the memorandum, his

attorneys described Mr. Young's criminal acts:

> By virtue of his position, Mr. Young possessed some confidential bid, proposal,
> and source selection information concerning this weapons maintenance contract.
> Mr. Young then shared some of this information with two civilian contractors,
> Michael Taylor and Christopher Harris—old friends of Mr. Young and his co-
> defendants in this case. At the time, Taylor operated a company called AISC
> which specialized in providing security services.  The information shared included
> the government's price estimate for the contract, source selection information, and
> information detailing the competitor's bid.  This information may have provided
> Harris and Taylor with a competitive advantage in obtaining the initial pilot
> contract, which they were eventually awarded after beating out the only other
> competitor, PSI, a company technically unqualified to perform this type of
> contract.

(Id. 9-10.)  The memorandum continued with Mr. Young's own admission:

9

> During the contract bidding process, I disclosed some of the protected contract information to my co-defendant civilian contractors in this case. I truly believed that my co-defendant civilian contractors were qualified and would perform capably on the contract.  They performed so exceptionally well in remote areas of Afghanistan in direct support of front line Afghan forces that they were extended repeatedly over the next 3 years until this investigation.  Nonetheless, I am solely responsible for sharing that information and I am sorry.

(Id. 10.)

At the sentencing hearing, Mr. Tolman continued to argue that a sentence of 36 months was appropriate.[7]  Mr. Tolman was adamant that there had been no conspiracy among the three Defendants, pointing to the fact that none of them had pleaded guilty to the conspiracy charges. The court found this contention puzzling and questioned Mr. Tolman about whether Mr. Young was "backing away from his admission that he possessed confidential, protected information, and that he disclosed it to Mr. Taylor, and that he received money for it."  (Sentencing Hr'g Tr. 9-10, 2:12-cr-502 ECF No. 604.)  Mr. Tolman quickly assured the court that Mr. Young "has always and substantially confirmed that he gave information."  (Id.)  On further questioning, Mr. Tolman acknowledged that Mr. Young had received money.[8]  (Id.)

The court sentenced Mr. Young to 42 months in custody followed by 36 months of supervised release. (Id. 57.)

## ANALYSIS

### The Effect of Mr. Young's Guilty Plea

The Supreme Court has "strictly limited the circumstances under which a guilty plea may

---

[7] The probation officer calculated Mr. Young's sentencing guideline range to be 63-78 months. (Presentence Report ¶ 50, 2:12-cr-502 ECF No. 588.)

[8] The United States contends that Mr. Young received $9.4 million dollars. (Sentencing Hr'g Tr. 35.)

be attacked on collateral review. 'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).

In his written motions, Mr. Young does not explicitly challenge the voluntary and intelligent nature of his plea.  But reading Mr. Young's Amended Motion liberally and after hearing the arguments of Mr. Young's attorney at the hearing on the motion, the court concludes that Mr. Young is contending that certain of the claims he does raise in his motion show that his guilty plea was neither voluntary nor intelligent.  These claims are: (1) the United States withheld evidence that would have established Mr. Young's innocence; (2) by withholding documents, the United States violated Brady v. Maryland, 373 U.S. 83 (1963); (3) Mr. Young received ineffective assistance of counsel; and (4) the United States engaged in prosecutorial misconduct.

The first two claims center on Mr. Young's insistence that the United States withheld documents, so the court will analyze these two claims together.

The Documents

Mr. Young contends:

> At all relevant times during its prosecution of Young, the Government was in possession of information that would have proven Young's innocence.  This includes the associated case, USA v. Eisner, daily reports, briefing, SITREPS and a tremendous amount of data storage of status briefs, emails, all of Young's daily reports with his supervisors along with all program staff and follow-on staff from two different commands and seven levels of military.

(Am. Mot. 34, ECF No. 5.)

But as the United States points out, Mr. Young had, at the time he plead guilty, most of

the documents that he now argues prove his innocence.  (U.S. Resp. Mot. 14, ECF No. 4; U.S.
Resp. Am. Mot. 6, 8, ECF No. 13.)

Also, when Mr. Young entered his guilty plea, he had a pending motion to compel which
was scheduled for hearing (Mot. to Compel, 2:12-cr-502 ECF 476.)  In his thirteen-page motion
to compel, Mr. Young asked for the same documents he now maintains the United States
withheld.  For that reason, the court finds Mr. Young's present claim disingenuous.

Moreover, in his motion, Mr. Young does not state what, specifically, these allegedly
withheld documents would have shown.  He does not identify which particular documents
contain exculpatory evidence.  This lack of specificity is particularly troubling in light of the
large amount and generic nature of the documents he contends the Government has withheld.
The documents include SITREPS which, as discussed above, the Government described as "a
broad universe of material" and "voluminous."

Mr. Young contends that the United States violated Brady v. Maryland, 373 U.S. 83
(1963), by withholding exculpatory documents.  To meet his burden under Brady, Mr. Young
must show by a preponderance of the evidence that the United States suppressed evidence, the
evidence was favorable to him, and the evidence was material.  U.S. v. Quintanilla, 193 F.3d
1139, 1149 (10th Cir. 1999) (internal citations omitted).  Mr. Young has failed to meet this
burden.

First, Mr. Young has not shown that the United States suppressed evidence.  The United
States argued convincingly, in response to Mr. Young's motion to compel, that the documents he
sought were not in the possession of the United States.  (U.S. Resp. Mot. Compel 3-5, 2:12-cr-
502 ECF No. 508.)  Mr. Young has not demonstrated otherwise.

Second, because of Mr. Young's failure to identify specifically what exculpatory evidence would be found in these documents, it is impossible to determine whether the evidence would indeed be favorable to him.  And, even assuming the documents did contain exculpatory evidence, there is no way to determine whether it would be material.  In effect, Mr. Young is asking the court to speculate, which the court may not do.  The Tenth Circuit Court of Appeals, in explaining the materiality standard, made that clear:

> "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  In making this determination, we evaluate the withheld evidence "in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist."  We do not, however, resort to speculation.  "'The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard.'"

United States v. Ahrensfield, 698 F.3d 1310, 1319 (10th Cir. 2012) (internal citations omitted) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985); Banks v. Reynolds, 54 F.3d 1508, 1518 (10th Cir. 1995)).

Ineffective Assistance of Counsel

To determine whether Mr. Young received ineffective assistance of counsel, the court must apply the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (setting forth Strickland test and applying the test to "ineffective-assistance claims arising out of the plea process.").  The court must consider the totality of the circumstances.  Strickland, 466 U.S. at 681.

Under that standard, the court must first determine whether Mr. Young's attorneys' representation fell below an objective standard of reasonableness.  Id. at 688.  Courts make this

determination applying "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential." Id.

Second, Mr. Young must show that there is a reasonable probability that, but for his attorneys' errors, he would not have pleaded guilty (this is the "prejudice" requirement). Hill, 474 U.S. at 57. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Mr. Young has the burden to establish that he was actually prejudiced by his attorneys' alleged ineffective representation. United States v. Andrews, 790 F.2d 803, 815 (10th Cir. 1986).

In Hill v. Lockhart, 474 U.S. 52 (1985), the Court stated: "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). The Court went on to explain that the analysis of "prejudice"

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Id. at 59.)

Significantly for Mr. Young's claims, the Court described what a defendant must show:

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error " prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the

14

likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.

(Id.)

With this guidance in mind, the court turns to Mr. Young's claims of his attorneys' alleged errors: (1) failure to conduct a thorough pre-trial investigation; (2) failure to present a defense theory or mitigation evidence; and (3) failure to prepare for sentencing hearing.

Mr. Young's first claim is unpersuasive.  Mr. Young argues that his counsel failed to "investigate important exculpatory evidence and witnesses merely because the Government represented it did not exist . . . ."  (Am. Mot. 49, ECF No. 5.)  Mr. Young identifies these witnesses as

[t]he Contract Officer [CO], Young's supervisor, the officer in charge of the contract selection committee, and all official keepers of the record.  Defense counsel relied exclusively on the Government's representations that these witnesses could not remember anything about the case and chose not to interview many of the witnesses at all.

(Id.)

Mr. Young's allegations echo his claim that the documents he contends the United States withheld contained exculpatory evidence.  He makes only conclusory statements that these witnesses "were critical to the defense and could have assisted in corroborating PCI authorization, Mr. Young's duties and involvement, and the allocation of business funds."  (Id.)

Mr. Young contends that the most important witness that his counsel failed to interview was "the contract officer.  With his hand written journal (part of discovery evidence) the CO could have remembered significant facts. . . . [H]e could have uncovered the errors as outlined in

the Introduction, Background and Ground One of this motion." (Id. 49-50.)  But the

Introduction, Background and Ground One of Mr. Young's motion are not helpful to Mr.

Young's claim.  In these sections, Mr. Young claims that the CO made numerous administrative

errors on contracts.  He contends that he now has evidence that shows he is not guilty of

disclosing protected information to his Co-Defendants.  Mr. Young argues that the documents

the United States relied on as evidence that Mr. Young did illegally disclose protected

information were actually "the product of the CO's mistakes. . . ."  (Id. 6.)

Mr. Young attached exhibits to his motion which, presumably, are the newly discovered

evidence he claims shows that he is not guilty.  These documents appear to be evidence that the

witnesses listed above could have explained.  But, as noted earlier, Mr. Young had these

documents at the time he pleaded guilty or they were the subject of the motion to compel that

was pending at the time he pleaded guilty.

Next, Mr. Young complains that his counsel failed to subpoena "known contract

inspection records, contract office records, program staff/Young and Young's supervisor emails,

daily logs, situation reports, development /status brief and all documents relevant to this case."

(Id. 50.)  This argument is simply a repeat of Mr. Young's contention that the United States

failed to disclose documents which the court rejected earlier in this order.

Mr. Young maintains that his counsel "requested the case file from the defense counsel

38 times."  (Am. Mot. 51, ECF No. 5.)  He alleges that "counsel was being hired to review the

case" but that his trial counsel did not return their calls or turn over the case file.  (Id.)  But he

does not give any names of these other attorneys, or, significantly, describe what was in the files

that Mr. Young did not already have.  This claim is far too conclusory and stripped of details to

16

provide any guidance about whether his counsel was ineffective.

In his second claim, Mr. Young alleges that his counsel failed to present a defense theory or submit any mitigation evidence.  (Id. at 52.)  These claims would have more merit if Mr. Young had gone to trial.  However, close examination of the substance of Mr. Young's argument makes clear that he is again raising the issue that his counsel did not conduct a thorough pretrial investigation, an issue that the court has found to be without merit.

The court can quickly dispose of the third alleged error.  Even assuming that Mr. Young's counsel did not prepare adequately for the sentencing hearing,[9] this would not have affected the plea process and is not relevant.

Finally, if Mr. Young believed that his counsel had failed in their representation of him, he could have told the court.  Instead, under oath, at the change of plea hearing, Mr. Young stated that he understood the two charges against him, had discussed the evidence related to each charge with his attorneys, and was "[v]ery satisfied" with his counsel.  (COP Tr. 5.)

**Claim of Prosecutorial Misconduct**

The Section 2255 Petitioner "can only prevail [on a claim of prosecutorial misconduct] if he demonstrates . . . that the alleged governmental misconduct affected the voluntariness of the plea."  United States v. Scruggs, 691 F.3d 660, 670 (5th Cir. 2012).

Pre-Indictment Investigation

This first claim concerns the allegedly withheld documents.  The court has already dealt

---

[9]This claim is belied by the record.  Mr. Young's counsel filed a sentencing memorandum and argued strenuously at the hearing that Mr. Young should be sentenced at the low end of the agreed-upon sentencing guideline range.

with that topic.  There was no <u>Brady</u> violation because the United States did not withhold exculpatory documents.  And the documents that Mr. Young now contends show his actual innocence were in his possession at the time he pleaded guilty.  Accordingly, he cannot prevail on this part of his prosecutorial misconduct claim.

Post-Indictment Investigation

As for this portion of his claim, Mr. Young describes a series of post-indictment situations that but for their occurrence he would not have pleaded guilty.  But he does not connect any of the situations to the change of plea proceedings.

For instance, he contends that government investigators lied to important defense-friendly witnesses, instructed the witnesses not to disclose the "lies" the investigators had told them, and manipulated the witnesses to the point that the witnesses "quickly turn[ed] hostile" and were "reluctant to cooperate with the defense[.]" (Am. Mot. 65, 2:12-cr-502 ECF No. 5.)  Not only are his allegations unsupported by evidence of any kind, but even if there were evidence, he does not explain how investigators' actions toward the witnesses subsequently forced Mr. Young to plead guilty and admit to facts in the Statement in Advance of Plea.

Because Mr. Young does not show that the Government's alleged conduct affected the voluntariness of his plea, his claim of post-indictment prosecutorial conduct has no merit. Moreover, Mr. Young stated, under oath, that he had not been threatened or coerced into pleading guilty.

Post-Plea Intimidation and Interference with Claims

Mr. Young claims post-plea prosecutorial misconduct because the United States attorneys allegedly intimidated two claimants who filed motions to protect their interests in the assets that

were subject to the forfeiture proceeding.  According to Mr. Young, the claimants decided not to follow up on their claims because the government investigators threatened prosecution for perjury.  His claim fails for two reasons.

First, it is not supported by any evidence.  He does not cite to anything in the record and instead relies solely on his own conclusory statements.

Second, even assuming what he says is true, the information he provides is not relevant because it did not affect the voluntariness of the plea.  Mr. Young alleges that after he pleaded guilty, the Government intimidated forfeiture claimants and interfered with their claims to assets slated for forfeiture.  Nothing suggests that those third parties were connected to the case in any way other than through the separate forfeiture action, much less to the events surrounding Mr. Young's guilty plea or Mr. Young's decision to plead guilty.  And, to the extent the Government did intimidate those claimants (of which there is no evidence), the decisions affected were the claimants' decisions not to pursue their asset claims.  Statements made by the prosecutors to the claimants had nothing to do with Mr. Young's earlier decision to plead guilty.  Common sense dictates that conduct which did not occur until after the plea of guilty had no bearing on the voluntariness of that guilty plea.  The alleged misconduct could not have affected the voluntariness of his plea.

The only evidence before the court is that Mr. Young, under oath, expressly confirmed that he had not been threatened or coerced into pleading guilty by anyone.  Nothing in his motion contradicts the record.

Based on all of the above, the court finds that Mr. Young's plea of guilty was knowing and intelligent.

But there is one claim remaining: that is, Mr. Young's claim of actual innocence.

**Claim of Actual Innocence**

To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation marks and citations omitted).

During the Rule 11 colloquy, as described above, the court took care to ensure that the charges against Mr. Young were explained to him.  Mr. Young told the court that he understood the charges and had reviewed them and the relevant evidence with his attorneys.

Mr. Young, at the change of plea hearing, admitted that the facts in the Statement in Advance of Plea document describing Mr. Young's criminal actions were true.  (COP Tr. 21; Statement in Advance of Plea 4-5, 2:12-cr-502 ECF No. 527.)

Mr. Young's lengthy explanation in the motion of why he is actually innocent is simply an attempt to recast the evidence in a new light.  The evidence that Mr. Young maintains is proof of his innocence is not newly discovered evidence nor has Mr. Young shown that it is exculpatory.  Mr. Young was assisted by very competent attorneys.  He entered a knowing and voluntary plea of guilty.  Mr. Young is bound by his guilty plea.

**ORDER**

For the foregoing reasons, Petitioner David Young's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 29 U.S.C. 2255 and Memorandum [of] Law [in] Support (ECF No. 5) is DENIED.  Mr. Young's Motion for Partial Summary Judgment (ECF No. 6), Motion for Partial Summary Judgment (ECF No. 14), Motion to [sic] Leave of Court to Conduct Discovery (ECF No. 8), and David Young's Second Mot. to Conduct Discovery (ECF No. 23)

are DENIED AS MOOT.

DATED this 22nd day of December, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge